**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **ERIC BROWN,** | * | |
| **Individually and as Administrator** | * | |
| **Of the ESTATE OF LORETTA LEWIS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION FILE NO.:** |
| | * | |
| **MEDSCOPE AMERICA** | * | |
| **CORPORATION, and** | * | **JURY TRIAL DEMANDED** |
| **AVANTGUARD MONITORING** | * | |
| **CENTERS, LLC** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

## COMPLAINT

COMES NOW Plaintiff Eric Brown, Individually and as Administrator of the Estate of Loretta Lewis, by and through his counsel, and files his Complaint against MedScope America Corporation and AvantGuard Monitoring Centers, LLC (collectively, "Defendants"), for the wrongful death and conscious pain and suffering of his mother Loretta Lewis. Eric Brown respectfully shows this Court as follows:

## I.    PARTIES, JURISDICTION AND VENUE

1.

MedScope America Corporation ("MedScope") is a foreign corporation doing business in Columbus, Muscogee County, Georgia, with its principal place of business at 222 W Lancaster Avenue, Paoli, Pennsylvania 19301.  Service of the Summons and Complaint may be served on MedScope's registered agent, National Registered Agents, Inc., 289 S. Culver Street, Gwinnett County, Lawrenceville, Georgia 30046-4805.

1

2.

AvantGuard Monitoring Centers, LLC ("AvantGuard") is a foreign limited liability company doing business in Columbus, Muscogee County, Georgia, with its principle place of business at 4699 Harrison Boulevard, Ogden, Utah 84403. None of the members of AvantGuard Monitoring Centers, LLC are citizens of the State of Georgia. Service of the Summons and Complaint may be served on AvantGuard's registered agent, CT Corporation System, 289 S. Culver Street, Gwinnett County, Lawrenceville, Georgia 30046-4805.

3.

Plaintiff Eric Brown is a resident of Muscogee County, Georgia. He is the surviving son of Loretta Lewis and the Administrator of Loretta Lewis' Estate.

4.

Jurisdiction is proper under 28 U.S.C. § 1332 in that there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

5.

Venue is proper under 28 U.S.C. § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district. In addition, because both Defendants have substantial contacts with and do business in this district and division, this judicial district is also regarded as their residence for venue purposes under 28 U.S.C. § 1391(c).

## II.    **OPERATIVE FACTS**

### A.    **Loretta Lewis' Reliance and Purchase of the MedScope Alert System**

6.

On August 19, 2019, Loretta Lewis signed an Agreement with MedScope for a Mobile Pendant medical alarm system that provided two-way voice monitoring by MedScope and AvantGuard Monitoring.

7.

According to MedScope's website, the Mobile Pendant is a "go anywhere device that summons help **to your exact location anywhere in the United States**. Pressing the alert button on this small, lightweight, device activates 911 locating technology and two-way voice communication." *See*, MedScope website printout attached as Exhibit A.

8.

The August 19, 2019 Agreement between Loretta Lewis and MedScope was to provide continuous 24-hour monitoring service by AvantGuard of designated signals from the MedScope Personal Emergency Response System, referred to as the "PERS". *See*, August 19, 2019 Agreement attached hereto as Exhibit B.

9.

Individuals, like Loretta Lewis, who require living assistance or help in an unexpected emergency can benefit from a Personal Emergency Response System (PERS) with 24/7 PERS monitoring services.

10.

Prior to signing the August 19, 2019 Agreement, Loretta Lewis and her son, Eric Brown, researched medical alert device systems on the Internet.

3

11.

Loretta Lewis and Eric Brown studied information found on MedScope's website, as well as informational videos and tutorials regarding MedScope's devices on the Internet and YouTube.

12.

The videos that Loretta Lewis and Eric Brown watched and relied upon on YouTube were placed there by MedScope America Corporation on or around May 30, 2013. *See*, Screenshot of MedScope YouTube video attached hereto as Exhibit C.

13.

MedScope's advertisements on the Internet are to the general consuming public.

14.

MedScope advertises on the Internet to the general consuming public in an effort to sell its medical alert devices.

15.

The MedScope YouTube videos have thousands of views and are intended to persuade consumers to choose MedScope over other companies for medical alert monitoring.

16.

MedScope's advertisements are made to the elderly and/or disabled with the intention to persuade them to purchase MedScope's products.

17.

The May 30, 2013 MedScope YouTube video depicts an elderly lady that has fallen in her kitchen. Once alerted to the fall, the MedScope operator states that "we will send someone immediately and we will contact your physician."

18.

The May 30, 2013 MedScope YouTube video states that "the MedScope Emergency Response System enables a person living alone or at risk of falls or has other medical or age-related concerns to get help **at once** in case of an emergency."

19.

The May 30, 2013 MedScope YouTube video also states that "MedScope monitoring personnel are highly skilled representatives and are on call 24 hours a day 7 days a week."

20.

The May 30, 2013 MedScope YouTube video also states that "when an alert signal is received, they have access to up-to-date medical records, as well as current phone numbers for all emergency contacts and the preferred physician."

21.

MedScope's advertisements are deceptive and affect the general consuming public interest.

22.

MedScope advertises on the Internet that "calls are answered by **our 9-1-1 certified response operators** who dispatch help as needed."

23.

As is standard in the alarm company industry, MedScope contracts with a third-party monitoring center to answer alarm calls. MedScope's reference to "*our* 9-1-1 certified response operators" is actually MedScope's partner AvantGuard's response operators.

24.

MedScope knows that many of its customers are vulnerable and are often suffering from a medical disability.

25.

MedScope advertises to and knows that its consumers are often elderly and/or disabled and are living alone.

26.

MedScope advertises to consumers that are living alone with the expectation that those consumers living alone would benefit from a medical alert device system in the case of an emergency.

27.

MedScope partners with Defendant AvantGuard Monitoring to field their customer's emergency alert calls.

28.

According to its website, AvantGuard Monitoring's "mission is to provide professional monitoring solutions that save lives, protect property, and inspire peace of mind." *See*, AvantGuard Monitoring Website printout attached hereto as Exhibit D.

29.

According to its website, "AvantGuard offers the ***most reliable PERS monitoring service available***, with a commitment to providing a fast, professional, compassionate response for each and every signal."

30.

It is AvantGuard's practice to retain all recordings; however, when requested by Plaintiff for the recording regarding Loretta Lewis' medical alert on December 11, 2019, AvantGuard stated that the call was lost and referenced a computer glitch as explanation of why the call cannot be found.

6

31.

On March 18, 2020, Plaintiff requested the recording of Loretta Lewis' December 11, 2019 medical alert; however, AvantGuard failed to preserve the recording of Loretta Lewis' December 11, 2019 medical alert.

32.

When asked why AvantGuard did not preserve the December 11, 2019 recording, AvantGuard stated that "during our investigation of where the recording could be we found that it had been a part of a batch of recordings that were lost during our transition from our old recording storage to our new recording storage."

33.

According to AvantGuard's website, "PERS and mobile PERS offer their users a true sense of freedom and safety, knowing they can receive emergency assistance from AvantGuard with the push of a button. Seniors seeking to maintain independence as they age, family and professional caregivers seeking peace of mind, along with security sensitive students, lone workers, and mobile workers who spend significant time alone are all great candidates for this service."

34.

According to AvantGuard's website, "in the event of a medical emergency or safety threat, PERS dealers and their customers need to know **that their monitoring service will be there for them, no matter what**. AG Monitoring has invested aggressively to achieve 100% redundancy to ensure the safety and security of your customers. We regularly test our failover system to make sure that if a disaster impacts one monitoring center location, the other will take the calls at full capacity without a hitch."

35.

Because of the life-critical nature of PERS devices, Central Station Redundancy is a must have. PERS users live in unpredictable circumstances and cannot afford to go without service in time of need.

36.

AvantGuard advertises on its website that "we partner with the best companies to help your business grow and succeed."

37.

AvantGuard and MedScope hold themselves out as partners.

38.

Loretta Lewis was deceptively and unfairly duped by MedScope and AvantGuard into the consumer transaction wherein she received a mobile pendant medical alert system that was supposed to notify emergency personnel of her "exact location anywhere in the United States" and was supposed to be monitored by 911 certified response operators that would immediately send someone to her location and call her physician upon notice of a medical alert.

**B.**   **Loretta Lewis' December 11, 2019 Medical Distress Call**

39.

On December 11, 2019, Loretta Lewis ***could not breathe*** and activated her MedScope PERS device around 11:43 a.m. EST.

40.

Loretta Lewis was in her home alone and the doors were locked.

8

41.

According to MedScope's "detailed activity report", Loretta Lewis told MedScope at 11:43 am that she ***"cannot breathe".***

42.

After Loretta Lewis activated her emergency medical alert system and spoke with an operator, the operator called 911 and identified that she was with "the MedScope Monitoring Center".

43.

The "MedScope Monitoring Center" is actually AvantGuard Monitoring.

44.

Once connected with 911, the MedScope Monitoring Center operator informed 911 that Loretta Lewis was just "having trouble breathing" not that she could not breathe.

45.

The MedScope Monitoring Center operator failed to inform 911 that Loretta Lewis ***"cannot breathe."***

46.

The MedScope Monitoring Center operator failed to inform 911 that Loretta Lewis was home alone.

47.

The MedScope Monitoring Center operator failed to gain sufficient information for 911 regarding Loretta Lewis' condition and whereabouts in her home.

48.

The MedScope Monitoring Center operator failed to gain sufficient information for 911 regarding whether or not Loretta Lewis' doors were locked or whether or not she was inside her home.

49.

If the MedScope Monitoring Center would have gathered the correct information on behalf of Loretta Lewis, the 911 operator would have known to dispatch a ***firetruck*** with EMS.

50.

If the MedScope Monitoring Center would have accurately reflected to the 911 operator that Loretta Lewis "***cannot breathe***" as opposed to was "***having trouble breathing***", the 911 operator would have known to dispatch a firetruck with EMS.

51.

The MedScope Monitoring Center acted as Loretta Lewis' voice to the 911 operator because Loretta Lewis was dying on her floor alone in her home with the doors locked for safety.

52.

EMS was dispatched at 11:46 am, approximately 3 minutes after Loretta Lewis alerted MedScope and AvantGuard Monitoring.

53.

When EMS arrived at Loretta Lewis' home, they discovered the doors were locked.

54.

EMS attempted to gain entry to Loretta Lewis' home, but was unsuccessful.

55.

EMS personnel called 911 and stated they could not gain entry into Loretta Lewis' home.

56.

Columbus 911, in response to the call from EMS, dispatched a Columbus Fire crew at 11:58, approximately 15 minutes after Loretta Lewis alerted MedScope and AvantGuard of her emergency.

57.

Columbus 911 would have dispatched a Columbus Fire crew immediately had Loretta Lewis' condition been accurately reported by MedScope and AvantGuard Monitoring to the Columbus 911 operator.

58.

Upon arrival, the Columbus Fire crew was able to gain entry into Loretta Lewis' home through a back bedroom window.

59.

Once inside, the Columbus Fire crew found Loretta Lewis laying supine on the floor in her bedroom. Loretta Lewis was barely breathing and moving her lips.

60.

It took approximately twenty-four (24) minutes from the time Loretta Lewis alerted MedScope and its partner AvantGuard Monitoring about her condition until emergency personnel were finally able to gain access and render aid because MedScope and its partner AvantGuard Monitoring failed to adequately respond to Loretta Lewis' emergency alert.

61.

MedScope and its partner AvantGuard Monitoring waited approximately seventeen (17) minutes before it contacted Loretta Lewis' next of kin about the emergency medical alert.

62.

MedScope and its partner AvantGuard Monitoring should have known that Loretta Lewis was home alone and unable to come to the door when she pressed her MedScope medical alert device.

63.

MedScope and its partner AvantGuard Monitoring should have known that it was likely that Loretta Lewis' doors were locked and that Loretta Lewis was not in a condition to get to her door.

64.

MedScope and its partner AvantGuard Monitoring failed to provide adequate information to the Columbus 911 operator on Loretta Lewis' behalf, including but not limited to the fact that Loretta Lewis *could not breathe*, the fact that Loretta Lewis was home alone with her doors locked, Loretta Lewis' physical location in her home, Loretta Lewis' inability to answer the door when emergency personnel arrived, Loretta Lewis' emergency contact information, and/or Loretta Lewis' medical history.

65.

MedScope's and its partner AvantGuard Monitoring's role in any emergency is to quickly answer the medical alarm button call, triage the customer's needs and location, and dispatch the appropriate local agency to handle the call.

66.

MedScope and its partner AvantGuard Monitoring negligently failed to properly triage Loretta Lewis' need and location.

67.

Unfortunately, because of the amount of time that passed between MedScope and its partner AvantGuard Monitoring alerting emergency personnel and when medical treatment was provided, Loretta Lewis was hospitalized and ultimately died in the hospital 3 days later.

68.

The first listed immediate cause of Loretta Lewis' death was ***anoxic brain injury***.

### III.    CAUSES OF ACTION

### COUNT ONE -- VIOLATION OF GEORGIA FAIR BUSINESS PRACTICE ACT

69.

Plaintiff incorporates paragraphs 1 through 68 herein.

70.

Defendants have engaged in unfair or deceptive acts or practices in the conduct of consumer acts or practices in trade or commerce in the state of Georgia in violation of O.C.G.A. § 10-1-393 (a).

71.

Defendants are partners within the meaning of Georgia's Fair Business Practices Act.

72.

Loretta Lewis was deceptively and unfairly tricked into the consumer transaction of purchasing MedScope PERS and the related monitoring and response services provided by AvantGuard Monitoring believing that they met a particular standard, including having certain qualities, characteristics, approval and certifications that these goods and services do not, in fact, have or meet.

13

73.

For example, MedScope promises its customers, including Loretta Lewis, that emergency distress calls will be answered by "9-1-1 certified response operators" who will "quickly answer the medical alarm button call, triage the customer's needs and location, and dispatch the appropriate local agency to handle the call." *See e.g.,* MedScope Information sheet, attached hereto as Exhibit E and 8/11/2020 Letter from MedScope President, attached hereto as Exhibit F.

74.

MedScope promises its customers that by using and relying on MedScope's goods and services in an emergency that MedScope operators will ensure that customers receive "***the fastest and most appropriate care***" for their emergency.

75.

MedScope and its partner AvantGuard Monitoring deceptively and unfairly dupes their customers, including Loretta Lewis, into believing that the emergency response they receive by using and relying on MedScope's PERS goods and services is *at a minimum* substantially the same *if not better than* the emergency response they would receive by calling 9-1-1 directly.

76.

MedScope's and its partner AvantGuard Monitoring's deceptive and unfair representations have caused actual confusion or actual misunderstanding as to the particular standards, qualities, characteristics, approval, affiliation, connection, associations and/or certifications concerning their goods and services.

77.

On December 11, 2019, Loretta Lewis detrimentally relied on the MedScope goods and related services she purchased to perform as promised to provide her with the fastest and most appropriate emergency response.

78.

However, instead of providing her with the fastest and most appropriate emergency response, Loretta Lewis' distress call was routed to MedScope's partner Defendant AvantGuard Monitoring, a call center which answers various types of customer services calls for many different companies.

79.

The emergency response provided to Loretta Lewis via her use of MedScope and AvantGuard Monitoring's goods and services on December 11, 2019 did not meet the standards and/or have the qualities, characteristics, approval and certifications of the emergency response she would have received had Loretta Lewis called Columbus 9-1-1 directly.

80.

MedScope and its partner AvantGuard Monitoring advertised and promised to act as Loretta Lewis' voice in her most urgent time of need.

81.

The emergency response provided to Loretta Lewis on December 11, 2019 via her use of MedScope and AvantGuard Monitoring's goods and services was neither fast nor appropriate.

82.

Loretta Lewis died as a result of MedScope and AvantGuard Monitoring's violations of Georgia law.

83.

On January 26, 2021, prior to filing the instant lawsuit, Plaintiff made a written demand to Defendants under the Georgia Fair Business Practice Act, O.C.G.A. § 10-1-399(b).   Attached hereto as Exhibit G is a copy of this letter, the contents of which Plaintiff expressly incorporates herein.

84.

Defendants failed to make any offer of settlement within the time limit provided in O.C.G.A. § 10-1-399(b).

85.

Defendants' unfair and deceptive acts and/or practices described herein have the potential to adversely affect the consumer marketplace and the economy in general.

86.

Pursuant to O.C.G.A. § 10-1-399 (b)-(c), Defendants are liable for all damages arising from Loretta Lewis' wrongful death, including for the full value of Loretta Lewis' life and her pain and suffering prior to her death, which damages shall also be trebled.

87.

Defendants are also liable for Plaintiff's attorneys' fees for their unlawful and deceptive conduct.

## COUNT TWO – UNFAIR OR DECEPTIVE PRACTICES TOWARD THE ELDERLY

88.

Plaintiff incorporates paragraphs 1 through 87 herein.

16

89.

Under Georgia law, individuals who violate the Georgia Fair Business Practices Act (FBPA) are subject to additional civil penalties under the Georgia Unfair and Deceptive Practices Towards the Elderly Act (UDPTEA) if the violation is committed against an elderly or disabled person. *See*, O.C.G.A. § 10-1-850 *et seq*.

90.

To state a claim under UDPTEA, a party must allege she is a disabled person or elder person. O.C.G.A. § 10–1–850 (defining "disabled person" and "elder person"). A disabled person is one "who has a physical or mental impairment which substantially limits one or more of such person's major life activities." O.C.G.A. § 10-1-850(1).

91.

Prior to her death, Loretta Lewis was a disabled person as defined in O.C.G.A § 10-1-850.

92.

Loretta Lewis suffered from COPD that substantially limited her major life activities.

93.

Major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, ***breathing***, learning, and working. O.C.G.A. § 10-1-850.

94.

As a result of Loretta Lewis' disability, she purchased MedScope's PERS medical alert system to assist her in the case of emergency.

95.

Plaintiff relies on the same factual allegations found in the Fair Business Practices Act claim to support the additional claim that MedScope and its partner AvantGuard Monitoring violated the UDPTEA.

96.

MedScope's and AvantGuard Monitoring's violation of the UDPTEA caused Loretta Lewis damages and ultimately her life.

97.

An elder or disabled person who suffers damage or injury as a result of an offense or violation described in this article has a cause of action to recover actual damages, punitive damages, if appropriate, and reasonable attorney's fees. *See*, O.C.G.A. § 10-1-853

98.

MedScope's and its partner AvantGuard Monitoring's conduct that resulted in the violation of the UDPTEA warrants an award of actual damages, punitive damages, and attorney's fees.

99.

Plaintiff seeks an award of actual damages, punitive damages, and attorney's fees for MedScope's and its partner AvantGuard Monitoring's violation of the UDPTEA in an amount to be determined by the enlightened conscious of a jury.

## **COUNT THREE – NEGLIGENCE**

100.

Plaintiff incorporates paragraphs 1 through 99 herein.

101.

Under Georgia law, "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or . . . (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." *Crewey v. Am. Med. Response of Ga., Inc.,* 303 Ga. App. 258, at *263 (quoting Restatement 2d Torts § 324A (a), (c)).

102.

Defendants MedScope and its agent/partner AvantGuard Monitoring were negligent in their attempt to provide Loretta Lewis with a timely and appropriate emergency response.

103.

Defendants' collective negligent failure to provide Loretta Lewis with a timely and appropriate emergency response resulted in Loretta Lewis' death.

104.

Loretta Lewis' death was a direct and proximate result of the delay in receiving a timely and appropriate emergency response to her distress call.

105.

Loretta Lewis' death was a direct and proximate result of the negligent manner in which Defendants collectively failed to gather appropriate information, including but not limited to Loretta Lewis' exact whereabout, whether or not Loretta Lewis could get to her door, whether or not Loretta Lewis' doors were locked, Loretta Lewis' medical history, the fact that Loretta Lewis "*cannot breathe*" as opposed to was "*having trouble breathing*".

106.

Defendants were to act as Loretta Lewis' voice to the Columbus 911 operator in Loretta Lewis' most desperate time of need.

107.

Defendants negligently handled Loretta Lewis' distress call, which resulted in emergency personnel not treating Loretta Lewis for nearly twenty minutes after she activated her medical alert device, although EMS were present, but not inside her home, while she was dying from an inability to breathe.

108.

Absent Defendants' negligence, Ms. Lewis' death could have been avoided.

109.

The AvantGuard Monitoring operator who answered Loretta Lewis' call failed to follow standard practices, policies and procedures that are required for a proper response to a distress call for emergency services.

110.

For example, among other things, the operator failed to stay on the line with Loretta Lewis, failed to request and/or relay information concerning entry to Loretta Lewis' property, and failed to accurately relay the nature and severity of Loretta Lewis emergency to local responders, including the fact that she suffered from COPD.

111.

Defendants negligently failed to properly triage Loretta Lewis.

112.

Defendants negligently failed to properly identify where Loretta Lewis was located in her home.

113.

Defendants negligently failed to alert medical personnel of Loretta Lewis' medical history.

114.

Defendants' failure to relay accurate and complete information to Columbus 9-1-1 dispatch on behalf of Loretta Lewis concerning the nature and severity of her emergency, resulted in her hospitalization and death.

115.

MedScope is also liable for the negligent acts and omissions of its partner and agent, AvantGuard Monitoring.

116.

An individual's claim for wrongful death and an estate's claim for the decedent's pain and suffering are distinct causes of action. *See generally* O.C.G.A. §§ 51-4-2(a), 51-4-5(b).

117.

Eric Brown in his individual capacity and in his capacity as administrator are legally different persons.

118.

As the surviving child of Loretta Lewis and Administrator of her estate, Eric Brown is entitled to recover damages for the full value of the life of Loretta Lewis caused by Defendants' wrongful death of Loretta Lewis.

119.

Eric Brown is entitled to recover for the pain and suffering Loretta Lewis suffered prior to her death.

120.

As a direct proximate cause of Defendants' conduct, Eric Brown as the surviving child of Loretta Lewis is entitled to recover damages for the full value of Loretta Lewis' life.

121.

As a direct proximate cause of Defendants' conduct, Eric Brown as the Administrator of Loretta Lewis' Estate is entitled to recover for the conscious pain and suffering Loretta Lewis suffered prior to her death.

## COUNT FOUR – ATTORNEYS' FEES

122.

Plaintiff incorporates paragraphs 1 through 121 herein.

123.

The conduct of Defendants alleged throughout this Complaint evidences bad-faith and a willful and wanton disregard for the safety of others, including Plaintiff.

124.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense, entitling her to recover attorneys' fees and expenses under O.C.G.A. § 13-6-11.

125.

Defendants have violated Georgia's Fair Business Practices Act and the UDPTEA, which violations warrant an award of attorneys' fees and expenses.

## COUNT FIVE – PUNITIVE DAMAGES

126.

Plaintiff incorporates paragraphs 1 through 125 herein.

127.

The conduct of the Defendants alleged throughout this Complaint evidences bad-faith and a willful and wanton disregard for the safety of others, including Plaintiff.

128.

Defendants are liable for punitive damages for their willful, malicious, and reckless conduct and specific intent to cause harm to Loretta Lewis.

129.

Defendants' violation of Georgia's Fair Business Practices Act and the UDPTEA warrant an award of punitive damages.

## COUNT SIX – TREBLE DAMAGES

130.

Plaintiff incorporates paragraphs 1 through 129 herein.

131.

Pursuant to O.C.G.A. § 10-1-390 et. seq., Plaintiff provided written notice of her Georgia Fair Business Practices Act claim to Defendants prior to filing this lawsuit.

132.

Pursuant to O.C.G.A. § 10-1-390 et. seq., Plaintiff provided Defendants with an opportunity to resolve this matter prior to filing this lawsuit.

133.

Defendants refused to offer anything to Plaintiff to resolve this matter.

134.

Pursuant to O.C.G.A. § 10-1-390 et. seq., Defendants are liable for Plaintiff's actual damages in an amount to be determined at trial, which should be trebled for their intentional conduct.

135.

Defendants are liable for Plaintiff's attorney's fees for their unlawful and deceptive conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Eric Brown, individually and as Administrator of the Estate of Loretta Lewis, prays for judgment against Defendants as follows:

1. That Summons be issued requiring Defendants to appear as provided by law to answer this Complaint;

2. That Eric Brown recover compensatory damages, general damages and special damages as permitted under Georgia law;

3. That Eric Brown recover his expenses of litigation and attorneys' fees;

4. That Eric Brown recover punitive damages as permitted under Georgia law;

5. That Eric Brown's damages be trebled pursuant to Georgia's Fair Business Practices Act;

6. For a trial by a jury; and

7. For such other and further relief as is allowed by law and as the Court may deem just and proper.

Respectfully submitted, this 3rd day of May, 2021.

CHARLES A. GOWER, P.C.

Charles A. Gower
Georgia Bar No. 303500
Miranda J. Brash

Georgia Bar No. 475203
Shaun O'Hara
Georgia Bar No. 749503